UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:
10-21105-CIV-MORENO**

SOLAR STAR SYSTEMS, LLC d/b/a SKYNET 360,

    Plaintiff,

vs.

BELLSOUTH TELECOMMUNICATIONS, INC.,
d/b/a/ AT&T FLORIDA,

    Defendant.
_____/

## ORDER UPON MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE came before the Court upon a Motion to Dismiss Amended Complaint **(D.E. No. 15)**, filed on **May 21, 2010**.

THE COURT having considered the motion, the response and reply thereto, the pertinent portions of the record, the relevant case law, and being otherwise fully advised in the premises, the motion is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL BACKGROUND

Plaintiff SKYNET is a reseller of domestic intrastate, interstate, and international telecommunication services provided by other common carriers of telecommunication services. Defendant AT&T provides telecommunication services to resellers, including SKYNET, and to end-user customers, including end-user customers of SKYNET.

In May 2009, SKYNET entered into a Contract Service Arrangement Agreement (the "CSA") with AT&T to resell Primary Rate Interfaces ("PRIs") to its end-user customers. A PRI is a

telecommunication service that is capable of carrying multiple, simultaneous digital transmissions of voice, video, data, and other network services over traditional circuits of the public telephone network. PRIs can carry more data than traditional telephone lines.

In June 2009, SKYNET and AT&T executed an Addendum to the Agreement called the Special Service Arrangement Agreement (the "SSAA"). The SSAA includes a description of its purpose: "This Addendum is to remove, upon request, [SKYNET's] BellSouth® Primary Rate ISDN service PRI Screening table(s)." (*See* SSAA at 3.) The screening tables established how certain charges would be calculated for the telecommunication services AT&T was to provide SKYNET. The SSAA also provides that it "is based upon the following terms and conditions as well as any Attachments(s) affixed and the appropriate lawfully filed and approved tariffs which are by this reference incorporated herein." (*Id.* at 1.)

SKYNET claims that the contract, as embodied by the CSA and the SSAA, provided that SKYNET would be charged a flat $760 per-PRI rate and that there would be no charges that varied based on the usage of the PRIs in excess of that flat rate. SKYNET alleges that a series of e-mails between representatives of Plaintiff and Defendant demonstrates what was the mutual understanding of the parties as to the rate terms of the contract. The e-mails are between SKYNET's CEO, Mr. Camarillo, and Mr. Zucker, the Account Manager-National Business Markets of AT&T SE. SKYNET argues that these e-mails led it to understand that it would be charged a flat-rate fee for the PRIs, not a per-minute rate based on usage. There were also e-mails between Mr. Camarillo and another AT&T Account Manager, Mr. Wentzler. SKYNET contends that the e-mails with Mr. Wentzler show that the parties understood that the SSAA provided that SKYNET would never owe any usage-sensitive charges for its PRI rates. Some of the e-mails were sent after the SSAA was executed on June 10, 2009.

After AT&T began to provide SKYNET telecommunication services and a billing period had passed, AT&T invoiced SKYNET for charges that were based on a maximum included number of minutes of PRI usage per-month with an additional charge for each minute over the included amount. SKYNET disputed each of the invoices sent by AT&T as including incorrect usage-sensitive charges. AT&T contended that these were the correct charges provided for by the contract. In October 2009, after SKYNET refused to pay the amounts invoiced by AT&T, AT&T disconnected the PRIs that AT&T leased to SKYNET under the contract, thereby terminating the PRI service to SKYNET's customers. SKYNET claims that the termination of PRI service to its customers resulted in substantial financial losses to SKYNET.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). In short, the complaint cannot merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. *See id.* at 1950.

### III. DISCUSSION

AT&T moves to dismiss all eight counts of the Amended Complaint. AT&T's main argument is that most, if not all, of the counts are barred by the filed rate doctrine. The Court will first address whether the filed rate doctrine applies to the contract between these two parties. Next, the Court will address the counts separately to determine whether they state a claim upon which relief can be granted.

#### A. The Filed Rate Doctrine

AT&T argues that SKYNET's claims seek to enforce a contract rate that is different from the rate set by the contract, which was authorized by AT&T's General Subscriber Services Tariff (the "Tariff"). Additionally, AT&T states that some of the claims seek damages based on SKYNET having to pay a different rate than it believed it was promised in the contract. AT&T contends that if SKYNET were to prevail on its claims, the effect would be that its customers would be charged a rate other than the one provided for by the filed Tariff, which is prohibited by the filed rate doctrine.

The filed rate doctrine prohibits a regulated entity from charging rates for its services other than those properly filed with an authorized regulatory authority. *See Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1315 (11th Cir. 2004). Once a tariff is filed and approved, it becomes "the law" that exclusively governs the rights and liabilities of the carrier to the customer. *Id.* "Where the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right other than the filed rate[.]'" *Taffet v. Southern Co.*, 967 F.2d

1483, 1495 (11th Cir. 1992) (quoting *Montana-Dakota Utils. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251 (1951)). Customers of a regulated common carrier, such as a telecommunications provider, are "charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff." *Hill*, 364 F.3d at 1315. Generally, the filed rate doctrine seeks to eliminate discriminatory pricing or undue preference of customers when regulated industries contract to sell their services. *See AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222-24 (1998); *see also W. Union Tel. Co. v. Esteve Bros.*, 256 U.S. 566, 573 (1921).

SKYNET responds to the Motion to Dismiss and argues three reasons why the filed rate doctrine is not operable to bar its claims. First, SKYNET argues that the filed rate doctrine only applies to carriers that are regulated by a federal tariff that is applicable to interstate services. Second, SKYNET claims that the execution of the Addendum removed any references to the Tariff from the Agreement, and therefore, the Tariff was not incorporated to the contract. Third, SKYNET contends that the two parties agreed to operate outside the ambit of the Tariff and that agreement is reflected in the contract.

### *1. The Applicability of the Filed Rate Doctrine When the Tariff Involved Is State-Authorized and Applies to Intrastate Services*

SKYNET argues that the filed rate doctrine does not bar its claims because the doctrine only applies when there are interstate services that are governed by a federal tariff at issue. SKYNET contends that the Tariff here was authorized by the State of Florida and the services involved in the Agreement are entirely intrastate. Therefore, as SKYNET would argue, the filed rate doctrine is inapplicable. AT&T does not dispute that the services it provided are intrastate. Additionally, AT&T admits that the Tariff is state-authorized, as it was filed with the Florida Public Service Commission

and not a federal agency. AT&T disagrees with SKYNET's interpretation of the law, however, and contends that the filed rate doctrine applies to intrastate services governed by a state tariff as well. In *Taffet v. Southern Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992), the Eleventh Circuit was presented with the same argument regarding the filed rate doctrine's applicability to tariffs authorized by state agencies that SKYNET makes here. The appellants in *Taffet* were challenging tariffs that were filed with state agencies in Alabama and Georgia that regulated electrical power utility providers. The Eleventh Circuit held that the filed rate doctrine applies when the tariffs were authorized by state agencies. *See Taffet*, 967 F.2d at 1494 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992) ("[T]he filed rate doctrine applies whether the rate in question is approved by a federal or state agency.")). Therefore, SKYNET's argument that the filed rate doctrine is inapplicable because the Tariff here was filed with a Florida state court regulatory agency is without merit. *See also Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20 (2d Cir. 1994) ([C]ourts have uniformly held, and we agree, that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies."). Additionally, the Court has found no case that has required that the provision of services cross state borders for the filed rate doctrine to apply. Further, the *Taffet* court applied the filed rate doctrine when only intrastate services were involved. *See Taffet*, 967 F.2d at 1494. The Court finds that the filed rate doctrine is applicable when the tariff involved is state-authorized and governs only intrastate services.

### 2. The Incorporation of the Tariff into the CSA and the SSAA

SKYNET next argues that the SSAA superseded the CSA and does not incorporate the Tariff. SKYNET admits that the CSA directly incorporated the Tariff, but relies on the line of the SSAA that states, "this Agreement, and any orders, constitute the complete and exclusive statement of the Agreement between the parties, superseding all proposals, representations, and/or prior agreements, oral

or written betwen the parties relating to the subject matter of the Agreement." (*See* SSAA at 1.) SKYNET also alleges that the SSAA was executed after the CSA, thereby making supplanting any reference to the Tariff in the original CSA.

SKYNET's argument is without merit, because the SSAA incorporates the CSA and the Tariff in its clear language. The second sentence of the SSA provides: "This Addendum Agreement is based upon the following terms and conditions as well as any Attachment(s) affixed and the appropriate lawfully filed and approved tariffs which are by this reference incorporated herein." (*Id.* at 1.) Further, the SSAA indicates: "All terms and conditions of Contract Service Arrangement Agreement FL09-4145-00 apply to this Addendum Agreement unless modified herein." (*Id.* at 3.) One of the provisions of the CSA is that all "appropriate tariff rates and charges shall be included in the provision of this service.," and that "in the event any part of this Agreement conflicts with the terms and conditions of [SKYNET's] or any of its affiliated companies' lawfully file and approved tariffs, the tariff shall control." (CSA at 1.) Nowhere in language of the SSAA is it stated that the Agreement will remove the applicability and control of the Tariff and its terms; therefore, the SSAA did not alter the applicability of the Tariff as it was stated in the CSA. (*See* SSAA at 3 ("All terms and conditions of Contract Service Arrangement Agreement FL09-4145-00 apply to this Addendum Agreement unless modified herein.").) The Tariff and its rates apply to the agreement between SKYNET and AT&T as contained in both the CSA and the SSAA.

> *3. Whether the Contract as Embodied in the CSA and*
> *SSAA "Supplanted" the Tariff's Pricing Arrangement*

SKYNET contends that even if the PRI services involved here were subject to being governed by the Tariff, as the Court has found above, then "any such tariff and pricing arrangement was supplanted by the flat rated scheme set forth in the subsequently executed SSAA." (Pl.'s Opp'n at 12.)

SKYNET argues that the SSAA shows that the parties agreed to a pricing scheme other than the one provided for by the tariff. Further, SKYNET claims that the fact that the SSAA attempted to remove the PRI screening tables from operation provides proof that the parties envisioned rates not governed by the Tariff. The screening tables would be required for AT&T to measure traffic for the billing systems established by the Tariff, so their removal shows the parties intended to operate outside the Tariff system. In essence, SKYNET argues that even if the Tariff applied to this arrangement, the parties contracted around the Tariff rate systems in the SSAA.

The flaw with SKYNET's argument is that parties to an agreement for the provision of a tariff-regulated telecommunication service cannot contract around the tariff rate. The parties to a contract for tariff-regulated services must follow the charging rates as established by the tariff. *See Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1315 (11th Cir. 2004). "Not only is a carrier forbidden from charging rates other than as set out in its filed tariff, but customers are also charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff." *Id.* (quoting *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000) (internal footnotes omitted)). The parties are without authority to negotiate their own agreement based on rates other than those provided for by the tariffs. *See Advamtel, LLC v. AT&T Corp.*, 118 F. Supp. 2d 680, 689 (E.D. Va. 2000). Therefore, SKYNET's claim that the parties agreed to a rate charging system other than the system laid out in the Tariff is unavailing, because the parties are without authority to contract around the Tariff rates when the Tariff applies to the agreement.

In summary, the Court finds that the Tariff governs the rates that applied to the provision of services set out in the contract, which is contained in the CSA as amended by the SSAA. The filed rate doctrine requires the Court to grant AT&T's Motion to Dismiss as to any count that, if SKYNET was

to be successful on, would result in SKYNET paying a rate that is different than the Tariff rate. *See Advamtel, LLC*, 118 F. Supp. 2d at 689. Therefore, any count of SKYNET's Amended Complaint that seeks to challenge AT&T billing practices that were based on the Tariff rate will be dismissed. The Court will also consider the other arguments for dismissal contained in AT&T's Motion to Dismiss for each count.

### B. Count I: Violations of Section 201 of the Communications Act, 47 U.S.C. § 201

SKYNET alleges that AT&T violated Section 201 of the Communications Act, 47 U.S.C. § 201, by misrepresenting the services it offered, billing SKYNET incorrect charges, refusing to address billing disputes, and wrongfully terminating their provision of telecommunication services. The Communications act provides: "The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio . . . ." 47 U.S.C. § 152(a). Further, the Act makes a specific exception to deny application over intrastate wire or radio communication. *See* 47 U.S.C. § 152(b).

AT&T moves to dismiss Count I on the grounds that the telecommunication services involved here were intrastate and the Act does not apply. It is true that SKYNET's Amended Complaint does not allege that the services here were interstate. Nor does SKYNET deny AT&T's contention that the services here were entirely intrastate in its response to the motion to dismiss. Indeed, much of SKYNET's argument against the application of the filed rate doctrine is based on their characterization of the telecommunication services here as being only intrastate. Because the Communications Act does not apply to intrastate telecommunication services, AT&T's motion to dismiss Count I is granted. *See Chladek v. Verizon N.Y. Inc.*, 96 Fed. App'x 19, 22 (2d Cir. 2004) ("The Communications Act of 1934 does not apply to communications services that are purely intrastate in nature.").

### C. Count II: Breach of Contract, and Count III: Breach of Implied Covenant of Good Faith & Fair Dealing

Both Counts II and III of the Amended Complaint are based on breach of contract principles. In Count II, SKYNET alleges that AT&T breached its contract by billing SKYNET for inaccurate charges, refusing to address billing disputes, and wrongfully terminating their provision of telecommunication services. Count II lists these allegations and includes that AT&T also breached the contract "among other ways." (*See* Am. Compl. ¶ 45.) Count III alleges six different ways that that AT&T breached the implied covenant of good faith and fair dealing, including the same three reasons alleged for the breach in Count II.

The allegations for Counts II and III violate the one-claim-per-count rule of Federal Rule of Civil Procedure 10(b). Several different scenarios of alleged breach are mixed together in one count. Further adding to the confusion is that the Amended Complaint simply incorporates the facts listed above without indicating any facts specific to each count. *See generally Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (discussing "shotgun" pleadings). Because Counts II and III violated the one-claim-per-count rule of Federal Rule of Civil Procedure 10(b), they are dismissed without prejudice and with leave to amend by **September 30, 2011**. The Court notes, however, that any allegations any parts of these two counts that would be barred by the filed rate doctrine will be dismissed, as discussed above.

### D. Count IV: Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.204, Fla. Stat. (2009)

AT&T moves to dismiss SKYNET's claim brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.204, Fla. Stat. (2009), on the grounds that there is no cause of action under the FDUTPA for activities regulated by the Florida Public Service Commission

("FPSC"). AT&T is correct that § 501212(5), Fla. Stat. provides that FDUTPA does not apply to "[a]ny activity regulated under the laws administered by the [FPSC]." § 501.204, Fla. Stat. The FPSC has exclusive jurisdiction "in regulating telecommunications companies . . . ." § 364.01(2), Fla. Stat. In this case, the rates charged in the contract between SKYNET and AT&T are governed by the Tariff, which is approved and regulated by the FPSC. In the similar case of *Extraordinary Title Services, LLC v. Florida Power & Light Company*, 1 So. 3d 400, 403 (Fla. 3d DCA 2009), the court affirmed the dismissal of a FDUTPA claim brought against a service provider that is governed by the FPSC because the FDUTPA does not apply to "[a]ny activity regulated under laws administered by the [FPSC]." Because FDUPTA does not contain a cause of action for telecommunications services regulated by the FPSC, the motion to dismiss Count IV is granted.

### E. Count V: Accounting

"Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990) (citing *F.A. Chastain Constr., Inc. v. Pratt*, 146 So. 2d 910, 913 (Fla. 3d DCA 1962)). SKYNET's Count V alleges that the parties were involved in a complex transaction involving the provision of valuable telecommunications services and that AT&T had a duty to handle appropriately the money SKYNET paid it. These allegations are sufficient to state a claim upon which relief can be granted. The motion to dismiss as to Count V is denied.

### F. Count VI: Defamation/Slander of Credit

Under Florida law, to state a claim for defamation, a plaintiff must allege the following: "(1) publication; (2) falsity; (3) actor must act . . . negligently on a matter concerning a private person; (4)

actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). AT&T argues that SKYNET's defamation count should be dismissed because the allegation of a false statement rests on factual allegations that are contradicted by the CSA.

SKYNET's alleges that AT&T made false statements by informing third parties and credit agencies that SKYNET had not paid its outstanding bills. SKYNET alleges that these statements were false because the bills it was receiving from AT&T were inaccurate and did not need to be paid. It is possible that this claim would be barred by the filed rate doctrine if SKYNET's argument was that based on the premise that it should have been billed based on a rate charging system that is different than the Tariff rate. On the basis of the Amended Complaint, however, SKYNET has pled all the required elements of the defamation claim and with sufficient factual support to state a claim upon which relief can be granted. The motion to dismiss Count VI is denied.

### G. Count VII: Fraud in the Inducement, and Count VIII: Negligent Inducement

In Count VII, SKYNET alleges that e-mail communications from a representative of AT&T, Mr. Zucker, misrepresented the charges that SKYNET would owe under the contract. In Count VIII, SKYNET makes similar allegations as in Count VII and alleges that Mr. Zucker knew or should have known that the representations he was making as to the rates under the contract were false. AT&T moves to dismiss both counts as barred by the economic loss rule.

The economic loss rule is a judicially created doctrine that applies when "parties are in contractual privity and one party seeks to recover damages in tort for matters arising in contract" *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). "Where damages in tort are the same of those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort." *Ginsberg v. Lenner Fla. Holdings, Inc.*, 645 Sp. 2d 490, 494

(Fla. 3d DCA 1994). However, if the tort alleged is an "independent tort," meaning it involves acts that are independent of a contractual breach, then it will not be barred by the economic loss rule. *See Nationwide Advantage Mortgage Co. v. Fed. Guar. Mortgage Co.*, No. 09-20372-CIV, 2010 WL 2652496, at *4 (S.D. Fla. Feb. 26, 2010). An inducement claim is such an example of independent tort "because it is a tort independent of a breach of contract claim in that it 'requires proof of facts separate and distinct from the breach of contract.'" *Int'l Star Registry of Ill. v. Omnipoint Marketing*, 510 F. Supp. 2d 1015 (S.D. Fla. 2007) (quoting *Indemnity Ins. Co.*, 891 So. 2d at 537). A plaintiff cannot avoid the economic loss rule, however, "by merely labeling a claim as fraud in the inducement, the fraud must be separate and distinct from the breach of the party's performance of the contract." *Medalie v. FSC Sec., Corp.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000).

SKYNET's two inducement counts are examples of inducement claims that are not tort claims that are independent from a claim of contractual breach. SKYNET is claiming that it was charged a rate that is different than the one that it was led to believe it would be charged under the contract. Any beliefs SKYNET may have had about the rate it would be charged, however, were "inseparably embodied in the parties' subsequent agreement" when the CSA and SSAA were executed. *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3d DCA 1997). The terms of the rate were covered in the contract, as embodied in the CSA and SSAA, and the alleged misrepresentations were "interwoven and indistinct from the hear of the contractual agreement." *Id.* Further, the integration clause contain in the SSAA supersedes any alleged misrepresentations and ensures that the agreement is embodied in the executed contract. *See id.*; *Int'l Star Registry of Ill.*, 510 F. Supp. at 1025 (noting that an integration clause in the contract superseded any alleged misrepresentations made before the parties entered the contract). The economic loss rule bars SKYNET from bringing a tort claim that

essentially seeks to challenge the terms of the contract. Because SKYNET's inducement claims are not independent torts that are separate and distinct from a claim for contractual breach, they are barred by the economic loss rule. The motion to dismiss Counts VII and VIII is granted.

### IV. CONCLUSION

For the reasons stated above, it is

**ADJUDGED** that AT&T's Motion to Dismiss the Amended Complaint (**D.E.** 15), is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion to Dismiss Counts I, II, III, IV, VII, and VIII is GRANTED.

2. Counts I, IV, VII, and VIII are DISMISSED WITH PREJUDICE.

3. Counts II and III are DISMISSED WITHOUT PREJUDICE, with leave to refile by **September 30, 2011**.

4. The Motion to Dismiss Counts V and VI is DENIED.

It is further **ADJUDGED** that the instant stay on discovery is lifted.

DONE AND ORDERED in Chambers at Miami, Florida, this 12 day of August, 2011.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record