UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 10-21105-CIV-MORENO

SOLAR STAR SYSTEMS, LLC d/b/a SKYNET
360, a Florida Corp.,

    Plaintiff,

vs.

BELLSOUTH TELECOMMUNICATIONS, INC., d/b/a AT&T FLORIDA, a New Jersey Corp.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS IN PART

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss the Plaintiff's Second Amended Complaint **(D.E. No. 79)**, filed on **October 20, 2011**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED IN PART for the reasons stated below. Counts I, II, III, IV, V, VI, VII, VIII and IX are dismissed with prejudice. The motion to dismiss is denied as to counts X, XI and XII.

### Background

Plaintiff SkyNet is a reseller of domestic intrastate, interstate, and international telecommunication services provided by other common carriers of telecommunication services. Defendant AT&T provides telecommunication services to resellers, including SkyNet, and to end-user customers, including end-user customers of SkyNet.

In May 2009, SkyNet entered into a Contract Service Arrangement Agreement (the "CSA") with AT&T to resell Primary Rate Interfaces ("PRIs") to its end-user customers. A PRI is a telecommunication service that is capable of carrying multiple, simultaneous digital transmissions of voice, video, data, and other network services over traditional circuits of the public telephone network. PRIs can carry more data than traditional telephone lines.

In June 2009, SkyNet and AT&T executed an Addendum to the Agreement called the Special Service Arrangement Agreement (the "SSAA"). The SSAA includes a description of its purpose: "This Addendum is to remove, upon request, [SkyNet's] BellSouth® Primary Rate ISDN service PRI Screening table(s)." The screening tables established how certain charges would be calculated for the telecommunication services AT&T was to provide SkyNet. The SSAA also provides that it "is based upon the following terms and conditions as well as any Attachments(s) affixed and the appropriate lawfully filed and approved tariffs which are by this reference incorporated herein."

SkyNet claims that the contract, as embodied by the CSA and the SSAA, provided that SkyNet would be charged a flat $760 per-PRI rate and that there would be no charges that varied based on the usage of the PRIs in excess of that flat rate. SkyNet alleges that a series of e-mails between representatives of Plaintiff and Defendant demonstrates what was the mutual understanding of the parties as to the rate terms of the contract. The e-mails are between SkyNet's CEO, Mr. Camarillo, and Mr. Zucker, the Account Manager-National Business Markets of AT&T SE. SkyNet argues that these e-mails led it to understand that it would be charged a flat-rate fee for the PRIs, not a per-minute rate based on usage. There were also e-mails between Mr. Camarillo and another AT&T Account Manager, Mr. Wentzler. SkyNet contends that the e-mails with Mr. Wentzler show that the parties understood that the SSAA provided that SkyNet would never owe any usage-sensitive

charges for its PRI rates. Some of the e-mails were sent after the SSAA was executed on June 10, 2009.

After AT&T began to provide SkyNet telecommunication services and a billing period had passed, AT&T invoiced SkyNet for charges that were based on a maximum included number of minutes of PRI usage per-month with an additional charge for each minute over the included amount. SkyNet disputed each of the invoices sent by AT&T as including incorrect usage-sensitive charges. AT&T contended that these were the correct charges provided for by the contract. In October 2009, after SkyNet refused to pay the amounts invoiced by AT&T, AT&T disconnected the PRIs that AT&T leased to SkyNet under the contract, thereby terminating the PRI service to SkyNet's customers. SkyNet claims that the termination of PRI service to its customers resulted in substantial financial losses to SkyNet.

## Standard of Review

A court will not grant a motion to dismiss unless the plaintiff fails to allege any facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986). A complaint must have "enough facts to state a claim to relief that is plausible on its face"; if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 1974. When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986)."While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

## Legal Discussion

A. Breach of Contract Claims: Counts I-IX

Plaintiff's Second Amended Complaint pleads nine breach of contract claims that are dismissed based on this Court's previous Order on the filed rate doctrine's applicability to the contract in dispute. The Court has already ruled that these parties are without authority to negotiate their own agreement based on rates other than those provided for in the filed Tariff. *Solar Star. Sys., LLC v. BellSouth Telecomms., Inc.*, No. 10-21105-CIV, 2011 WL 3648267, *8 (S.D. Fla. Aug. 15, 2011). As this Court has previously stated, "[t]he filed rate doctrine requires the Court to grant AT&T's Motion to Dismiss as to any count that, if SkyNet was to be successful on, would result in SkyNet paying a rate that is different than the Tariff rate." *Solar Star. Sys., LLC v. BellSouth Telecomms., Inc.*, No. 10-21105-CIV, 2011 WL 3648267, *8-9 (S.D. Fla. Aug. 15, 2011). In other words, "any count of SkyNet's Amended Complaint that seeks to challenge AT&T's billing practices that were based on the Tariff rate will be dismissed." *Id.*

Plaintiff alleges that AT&T charged it per-minute rates that did not appear in AT&T's filed Tariff, and thus the Plaintiff attempts to characterize the per-minute rates as "non-tariffed." However, this Court has already rejected this argument and held that the Tariff authorizes the CSA which expressly sets forth the per-minute rate. "[T]he Court finds that the Tariff governs the rates that applied to the provision of services set out in the contract, which is contained in the CSA..." *Solar Star. Sys., LLC v. BellSouth Telecomms., Inc.*, No. 10-21105-CIV, 2011 WL 3648267, *8 (S.D. Fla. Aug. 15, 2011). The Plaintiff cannot conclusively label the CSA rates as "untariffed" when

this Court has already ruled that "[t]he Tariff and its rates apply to the agreement between SkyNet and AT&T as contained in both the CSA and the SSAA." *Solar Star. Sys., LLC v. BellSouth Telecomms., Inc.*, No. 10-21105-CIV, 2011 WL 3648267, *7 (S.D. Fla. Aug. 15, 2011).

Plaintiff's Second Amended Complaint pleads nine counts for breach of contract which challenge AT&T's billing practices, just as Plaintiff was warned to avoid. These nine counts all arise from Plaintiff's contention that AT&T should have billed Plaintiff at a flat rate, not at the per-minute rate. As in the first amended complaint, SkyNet's breach of contract claims are "that it was charged a rate that is different than the one that it was led to believe it would be charged under the contract." *Solar Star. Sys., LLC v. BellSouth Telecomms., Inc.*, No. 10-21105-CIV, 2011 WL 3648267, *13(S.D. Fla. Aug. 15, 2011). This contention is precisely the argument that this Court has already held is barred by the filed rate doctrine. Accordingly, these claims are dismissed.

B. Accounting and Defamation/Slander of Credit: Counts X and XI

In regards to these two claims, the Plaintiff re-pled the same factual allegations in this second amended complaint as it did in its first amended complaint. This Court previously ruled in Plaintiff's favor on both these counts, denying the motion to dismiss on the basis that Plaintiff's allegations were sufficient to state claims upon which relief can be granted. Accordingly, this Court again denies the motion to dismiss these claims.

D. Breach of Tariff: Count XII

In its second amended complaint, Plaintiff added this claim alleging that AT&T breached the terms of its filed Tariff. Plaintiff argues that this claim was properly brought under the Court's

permission to re-file its breach of contract claims. Substantively, the parties disagree whether the specific sub-sections Plaintiff cites, § A.42.3.1(K) and § A.42.3.1(L), apply to the services that SkyNet obtained from AT&T under the CSA. Viewing the second amended complaint in the light most favorable to the plaintiff, and accepting the plaintiff's well-pleaded facts as true, the plaintiff has sufficiently pled facts entitling it to relief for breach of Tariff. Accordingly, this Court denies the motion to dismiss this count.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of January, 2012.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record