UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  10-21105-CIV-MORENO**

SOLAR STAR SYSTEMS, LLC d/b/a SKYNET
360, a Florida Corp.,

       Plaintiff,

vs.

BELLSOUTH   TELECOMMUNICATIONS,
INC., d/b/a AT&T FLORIDA, a New Jersey
Corp.,

       Defendant.

_____/

## <u>ORDER DENYING MOTION TO DISMISS COUNTERCLAIMS</u>

THIS CAUSE came before the Court upon the Plaintiff's Motion to Dismiss the Defendant's

Counterclaims **(D.E. No. 69)**, filed on <u>**September 16, 2011**</u>.

THE COURT has considered the motion, response and the pertinent portions of the record,

and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED.

## <u>Background</u>

Plaintiff SkyNet is a reseller of domestic intrastate, interstate, and international

telecommunication services provided by other common carriers of telecommunication services.

Defendant AT&T provides telecommunication services to resellers, including SkyNet, and to end-

user customers, including end-user customers of SkyNet.

In May 2009, SkyNet entered into a Contract Service Arrangement Agreement (the "CSA")

with AT&T to resell Primary Rate Interfaces ("PRIs") to its end-user customers.  A PRI is a telecommunication service that is capable of carrying multiple, simultaneous digital transmissions of voice, video, data, and other network services over traditional circuits of the public telephone network.  PRIs can carry more data than traditional telephone lines.

In June 2009, SkyNet and AT&T executed an Addendum to the Agreement called the Special Service Arrangement Agreement (the "SSAA").  The SSAA includes a description of its purpose: "This Addendum is to remove, upon request, [SkyNet's] BellSouth® Primary Rate ISDN service PRI Screening table(s)."  The screening tables established how certain charges would be calculated for the telecommunication services AT&T was to provide SkyNet.  The SSAA also provides that it "is based upon the following terms and conditions as well as any Attachments(s) affixed and the appropriate lawfully filed and approved tariffs which are by this reference incorporated herein."

SkyNet claims that the contract, as embodied by the CSA and the SSAA, provided that SkyNet would be charged a flat $760 per-PRI rate and that there would be no charges that varied based on the usage of the PRIs in excess of that flat rate.  SkyNet alleges that a series of e-mails between representatives of Plaintiff and Defendant demonstrates what was the mutual understanding of the parties as to the rate terms of the contract.  The e-mails are between SkyNet's CEO, Mr. Camarillo, and Mr. Zucker, the Account Manager-National Business Markets of AT&T SE.  SkyNet argues that these e-mails led it to understand that it would be charged a flat-rate fee for the PRIs, not a per-minute rate based on usage.  There were also e-mails between Mr. Camarillo and another AT&T Account Manager, Mr. Wentzler.  SkyNet contends that the e-mails with Mr. Wentzler show that the parties understood that the SSAA provided that SkyNet would never owe any usage-sensitive charges for its PRI rates.  Some of the e-mails were sent after the SSAA was executed on June 10,

-2-

2009.

After AT&T began to provide SkyNet telecommunication services and a billing period had passed, AT&T invoiced SkyNet for charges that were based on a maximum included number of minutes of PRI usage per-month with an additional charge for each minute over the included amount. SkyNet disputed each of the invoices sent by AT&T as including incorrect usage-sensitive charges. AT&T contended that these were the correct charges provided for by the contract. In October 2009, after SkyNet refused to pay the amounts invoiced by AT&T, AT&T disconnected the PRIs that AT&T leased to SkyNet under the contract, thereby terminating the PRI service to SkyNet's customers. SkyNet claims that the termination of PRI service to its customers resulted in substantial financial losses to SkyNet.

## **Legal Discussion**

A. Primary Jurisdiction

In its motion to dismiss, SkyNet argues that the resolution of all these claims should be referred to the Florida Public Service Commission ("FPSC") or to the Federal Communication Commission ("FCC") because the claims raise a number of technical issues regarding the interpretation of AT&T's tariffs and billing practices. The claims AT&T bring include what SkyNet alleges are "technical issues": (1) that SkyNet has terminated 1+ long distance traffic, and (2) that SkyNet intended to use the PRI lines to engage in an access bypass scheme to terminate traffic in a manner intended to avoid paying access charges to AT&T.

In response, AT&T cites to case law demonstrating that claims of this type are not required to be referred to specialized agencies: "Courts have not referred claims that only allege violations of filed tariffs and do not question their validity." *Towne Reader Serv., Inc. v. MCI Telecomm. Corp.*,

No. 91-CV-115S, 1992 WL 225550, at *4 (W.D. N.Y. Aug 11. 1992). AT&T argues that these claims do not raise technical or administrative questions, but only questions of fact which do not need to be referred to an agency. AT&T also cites a Supreme Court case holding that the doctrine of primary jurisdiction did not require referral of an action for fraudulent misrepresentation to an agency: "The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case." *Nader v. Allegheny Airlines*, 426 U.S. 290, 305-06 (1975). Additionally, AT&T highlights that SkyNet's motion does not identify an administrative remedy that would be applicable to these counterclaims, despite its citation of cases in which an administrative remedy was provided by statute. Accordingly, these claims do not need to be referred to the FCC or FPSC.


B. Breach of Contract: Count I

AT&T seeks payment from SkyNet for the services AT&T provided pursuant to the CSA between the parties. In its motion to dismiss, SkyNet argues that AT&T has failed to state a claim for breach of contract because the filed rate doctrine bars AT&T from seeking payment for rates according to the CSA rather than rates of the Tariff. AT&T responds that the Tariff expressly authorizes the creation of the CSA and that the CSA provided pricing terms that were in addition to the Tariff, not in contradiction to it. In the alternative, AT&T argues that even if the CSA rates do not apply, then the significantly higher rates of the Tariff apply and SkyNet still owes AT&T for the value of the services it provided SkyNet. AT&T has satisfied the elements for a breach of contract and the filed rate doctrine does not bar its claim.

-4-

## C. Breach of Tariff: Count II

Contrary to SkyNet's position, AT&T's breach of Tariff claim is not based on SkyNet's failure to pay for services, but on SkyNet's improper termination of telecommunications traffic which violated a section of the Tariff that detailed how SkyNet was to use the PRI service. Because of these terminations, SkyNet was able to avoid paying access charges to AT&T.

In its motion, SkyNet rehashes the argument it made for the breach of contract counterclaim: that the filed rate doctrine bars AT&T from seeking payment for rates laid out in the CSA but not in the Tariff. This argument does not defeat AT&T's claim which is facially plausible and would entitle AT&T to relief.


## D. Fraudulent Misrepresentation: Count III

AT&T's fraudulent misrepresentation claim alleges that SkyNet did not disclose its intention to use an access bypass scheme, and if AT&T knew of this intention it would not have provided the PRI service which permitted this scheme to occur. AT&T has properly pled and supported this claim, and this Court should not dismiss it.

SkyNet's first argument for dismissing this claim is that AT&T did not plead this fraud claim with enough particularity. However, AT&T provided a specific date range in which this alleged fraud occurred (August 2009 - October 2009), as well as a specific representative example of this alleged fraud. AT&T's pleading was sufficient to put SkyNet on notice of the alleged scheme so that SkyNet could answer the complaint.

SkyNet's second argument is that this counterclaim merely restates AT&T's counterclaim for breach of contract and thus is barred by the economic loss rule. In response, AT&T argues that

the economic loss rule does not eliminate causes of action based upon torts independent of the contractual breach even if there is also a breach of contract claim. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996). In this case, AT&T's claim succeeds because it alleges "a tort action...for either intentional or negligent acts considered to be independent from acts that breached the contract." *Id.* The claim is that SkyNet omitted to tell AT&T how it would use the PRI lines, not that SkyNet breached the contract by using the PRI lines in this manner. AT&T relied upon the omission of SkyNet's intention to misuse the PRI lines, which resulted in AT&T losing payment of access charges it was entitled to receive. Although the damages will be calculated based on the terms of their contract, AT&T properly pleads a tort claim, not a breach of contract claim.

SkyNet's third argument is that the CSA's integration clause bars this claim just as this court previously ruled that SkyNet's claim based on AT&T's extra-contractual representations were barred by that clause. However, as AT&T responds, omissions are analyzed differently than representations, and the integration clause only bars claims arising from affirmative pre-contractual statements, but not claims arising from omissions.

DONE AND ORDERED in Open Court at Miami, Florida, this 5th day of January, 2012.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record